# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

JAMES K. WRIGHT, )
                         Plaintiff, )
v. ) Case No. CIV-11-187-SPS
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
                         Defendant. )

## OPINION AND ORDER

The claimant James K. Wright requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 4, 1959 and was fifty years old at the time of the administrative hearing. (Tr. 34). He completed high school and a year of college, and has worked as a fast food manager, store manager, assistant manager, and a construction contractor. (Tr. 62, 161). The claimant alleges inability to work since August 31, 2005, due to a spinal fusion at S-1, L4-L5. (Tr. 157).

## Procedural History

On February 7, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Gene M. Kelly conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 18, 2010. (Tr. 13-24). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light and sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he can stand/walk/sit for six hours in an eight-hour workday at thirty-minute intervals, and he can maintain a

production quota. Additionally, the ALJ found the claimant could do only limited climbing and occasional bending, stooping, squatting, kneeling, crouching, crawling, operating foot controls, pushing/pulling, and twisting his torso, and he was slightly limited in fingering, feeling, and gripping. The ALJ further stated that the claimant would need to avoid rough and uneven surfaces, unprotected heights, fast and dangerous machinery, and cold, damp environments. As to his mental impairments, the ALJ found that the claimant could do simple, repetitive, and routine tasks, but that his stress and content would be limited, and that he had a slight limitation with the public, co-workers, and supervisors. (Tr. 19). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could do in the national and regional economies, *e. g.*, order clerk, bench assembler, and clerical mailer. (Tr. 24).

## Review

The claimant contends that the ALJ erred (i) by failing to evaluate his impairments under Listing §1.04A; (ii) by failing to include all of his impairments in questions to the Vocational Expert ("VE"); (iii) by ignoring parts of the reports from his consultative examiners, including a Global Assessment of Functioning ("GAF") score; and (iv) by improperly evaluating his credibility. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The medical evidence reveals that the claimant had the severe impairments of back problems, depression, anxiety, and problems with legs, hips, knees, feet, and right hand.

(Tr. 15). As to his physical impairments, he injured his back at work when he slipped in a walk-in freezer on August 19, 2005. (Tr. 207). He subsequently underwent three procedures—an L-4 and L5-S1 laminectomy, discectomy, and fusion procedure in October 2006, exploratory surgery in November 2006 to excise scar tissue and an epidural hematoma, and removal of orthopedic hardware in August 2007. (Tr. 400-401). On October 12, 2007, the claimant's surgeon released the claimant from his care and discussed the claimant's work status by finding that the claimant could return to work at a medium status but that he could do fifteen pounds more frequently, and that he was somewhat limited in lifting, bending, twisting, pushing, and pulling. (Tr. 245). On January 15, 2008, Dr. John Munneke examined the claimant and opined that the claimant was not temporarily totally disabled and did not need vocational rehabilitation, that the claimant retained a 25% impairment to his body, and that 10% was related to preexisting conditions and injuries. (Tr. 330). A state agency physician reviewed the available medical evidence in September 2008 and concluded that the claimant could perform light work, noting that the claimant's RFC was limited by his credible complaints of pain. (Tr. 354-355). On October 27, 2009, Dr. S. A. Chaudry performed a consultative examination of the claimant, noting that the limitations reflected in his assessment began in 2005. (Tr. 456-470). Dr. Chaudry noted that the claimant had a painful range of motion in his lumbosacral spine, hips, knees, and feet, and that his gait was "unassisted and safe," but slow. (Tr. 458). X-rays revealed that the claimant had scoliosis and advanced degenerative arthritic changes in addition to post-operative changes in his lumbosacral spine, as well as degenerative arthritis in his hips and knees. (Tr. 458-459).

As to the claimant's ability to do work-related activities, Dr. Chaudry stated that the claimant could occasionally lift/carry up to 10 pounds, sit five hours, stand two hours, and walk one hour out of an eight-hour workday. (Tr. 461). Additionally, Dr. Chaudry found that the claimant could only occasionally reach, handle, finger, feel, push/pull, operate foot controls, climb stairs and ramps, balance, and stoop, but could never climb ladders or scaffolds, kneel, crouch, or crawl. (Tr. 462-463).

Psychologist Denise LaGrand, Ph.D., performed a consultative mental examination of the claimant on November 5, 2009. (Tr. 471-478). She noted that the claimant had received an employment offer in May 2008, but had turned it down due to insufficient funds for commuting to Tulsa for the job. (Tr. 471). Dr. LaGrand assessed the claimant with a full scale IQ score of 92, but noted that the claimant "provided an unusual combination of responses that is associated with non-credible reporting of somatic and/or cognitive symptoms. This combinations of responses may occur in individuals with substantial medical problems who report credible symptoms, but it could also reflect exaggeration." (Tr. 474-475). Additionally, Dr. LeGrand noted that the claimant "very likely" had "a psychological component to his somatic complaints," and was "likely to be prone to developing physical symptoms in response to stress," and that "[h]is responses indicate significant emotional distress." (Tr. 476). Dr. LeGrand noted that the claimant's score on the SIMS test indicated that the claimant was likely feigning his responses and was "highly suggestive of feigned or exaggerated neurologic impairment, amnestic disorder or memory impairment, low intelligence or cognitive incapacity, and affective disorder symptoms," but that "while he report[ed] unusual

symptoms, he [did] not do so in a deliberately misleading way." (Tr. 476-477). She assessed the claimant with a GAF of 45, and noted that the claimant's combination of mental and physical impairments "leads to greater impairment and makes his less likely to be successful in a job setting." (Tr. 478). Noting that the claimant's physical impairments was outside the scope of her examination, she concluded that the claimant's ability to perform adequately in most job situations was "low average," and that his condition was not likely to improve within 12 months. (Tr. 478).

At the administrative hearing, the claimant testified that he was fired from his last job because he injured his back, and that he could no longer worker because of pain in his back, hips, knees, feet, and legs in general, as well as arthritis in his hands. (Tr. 38, 40-40, 46-48). The claimant stated that the pain caused difficulty sleeping, and that he slept between four and five hours a night on average, and napped approximately twenty minutes twice a day. (Tr. 47, 55-56). He testified that he had trouble with standing and walking, and had only recently been able to acquire treatment through the VA. (Tr. 42-43). Additionally, the claimant testified that he had depression that affected his ability to concentration and think. (Tr. 40). Although he said that he gets along with people, he stated that he does not like to be around people. (Tr. 50). As to his daily activities, he testified that he did his own laundry and cooked, as well as had a garden and mowed the lawn, but that he did not dust or vacuum because the reaching would really hurt his back, and that his girlfriend made the bed and did the shopping. (Tr. 51-52).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. As relevant to this appeal, the ALJ stated that the

claimant's back surgery "certainly suggest[ed] that the symptoms were genuine," and that "[w]hile that fact would normally weight in the claimant's favor, it is offset by the fact that the record reflects that the surgeries were generally successful." (Tr. 20). The ALJ them summarized the medical records as to the claimant's back surgeries, including his surgeon's release and Dr. Munneke's assessment, but made no mention of Dr. Chaudry's assessment of the claimant. The ALJ interpreted Dr. LeGrand's opinion as finding depression and a pain disorder, but that the claimant was "most likely malingering." (Tr. 23). The ALJ then gave the state reviewing physician's assessment "considerable weight" as to the assessment of an RFC of light work, the claimant's surgeon's opinion that the claimant had reached maximum medical improvement and was released to work was given "controlling weight," the opinions of Dr. Munneke and Dr. Grooms were both given "great weight," and Dr. LeGrand's opinion was given "huge weight." (Tr. 22-23).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant

evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ failed to even mention, much less properly analyze, Dr. Chaudry's opinion. Additionally, Dr. Chaudry's assessment, done more than a year *after* the state reviewing physicians found the claimant could do light work with, *inter alia*, no manipulative limitation, varies substantially from Dr. Chaudry's finding that the claimant could only do sedentary work and could only, *inter alia*, occasionally reach, handle, finger, feel, push/pull. (Tr. 354-356, 456-470). In his brief, the Commissioner applies the *Watkins* factors in an attempt to discredit Dr. Chaudry's opinion, but such a post-hoc rationalization will not be adopted. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Second, although the ALJ stated in his written opinion that he had assigned "huge weight" to Dr. LeGrand's opinion, he failed to mention or discuss her statement that the combination of the claimant's mental and physical impairments "makes hi[m] less likely to be successful in a job setting," nor did he mention the assigned GAF of 45. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job," *Lee*

*v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added] [unpublished opinion], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have discussed the low GAF score assigned by Ms. LeGrand and determined whether it was due to occupational factors. *See Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence."); *Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted]. The ALJ thus erred when he assigned her opinion "huge weight" but failed to discuss *all* of Dr. LeGrand's findings as to the claimant's impairments. *See Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the Court cannot determine whether he actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby v. Astrue*, 260 Fed. Appx.

108, 112 (10th Cir. 2008) (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Consequently, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma